Good morning, Your Honors. Deputy Attorney Jim Potter for Appellant, Department of Toxic Substances Control, DTSC. I'd like to reserve five minutes for rebuttal. Okay. Try to keep your eye on the clock and we'll try to help. Thanks. May it please the Court. The question before the Court is really very narrow. Did Congress create a special liability rule under CERCLA for tax sale purposes that's not available to any other purchaser of contaminated property? And the answer is no. There's no support in the statutory text, in any indication of Congressional intent, or really in any other policy consideration. If Congress had wanted to have a special rule for tax sale purchases, it would have written it explicitly. It didn't do that. What Congress did do is craft a detailed set of performance standards that any purchaser of contaminated property must comply with in order to be exempt from CERCLA. Those performance standards are difficult to meet. They're commonly met, but they are a thorough examination of the property beforehand, the so-called all appropriate inquiries requirement under the statute, and the post-purchase reasonable steps requirement. Appellate, excuse me, Westside, argues that tax sale purchases are uniquely exempt from those requirements. And before turning to the legalities of it, the statutory analysis, I'd like to look at tax sale purchase and the tax option process for just a moment to illustrate the real implausibility that Congress would have done that. Contaminated properties are very commonly sold at tax sales. Some loans are contaminated property. They decide not to pay their property taxes anymore. That's illustrated by the facts of this case and the numerous warnings that Los Angeles County gave to Westside Delivery and the other bidders that the property you're bidding on may be contaminated, you need to invest. But was this property on the list of maybe contaminated or not when it was sold? I think it was not. It was not. So you can't say they gave lots of warnings to this property. They gave lots of warnings to others, which might lead one to believe that this property is not contaminated. The county does what it can to identify contaminated properties to purchasers. But the material in the record shows that, and this is at the excerpt of Regular 116, 117, the county says very explicitly in the materials they give out, we're telling you what properties we know are contaminated, but we don't know about all the contaminated properties. And in particular, they say you should contact my client, Department of Toxic Substances, the other state regulatory agencies, check with them. We don't know. And would your client necessarily know at the time of the tax sale? Oh, yeah. Absolutely. In fact, it's... Is that true? You know every property that's sold at a tax sale, you know whether there's contamination? Oh, no. But we know this one. You did know on this one at the time it was sold? Oh, yeah, absolutely. The department had begun a cleanup process several years earlier. It had compelled some of the former customers of Davis Chemical to come in, do a study. Those customers did the study. The remedial investigation paid for it themselves. And at the time of the tax sale, DTSC was getting ready to implement the cleanup process that the other responsible parties had identified. So there was a detailed record. Excuse me, counsel. I know you can't see me, but I did have a question. Please. This is kind of one of those sort of law school questions in a way. CERCLA has a very, very broad definition of a contractual relationship, an indirect contractual relationship that links a prior owner to subsequent owners with a variety of kinds of documents that transfer either ownership or possession of the real property. But my question is whether we have to look at state law to fill in the gaps as to what under state law actually transfers ownership. In other words, as I understand California law, when someone buys property at a tax sale, they take title as if the state had always owned the property and there's no sort of legal link between the tax sale buyer and the previous private owners, except for things like covenants running with the land, which is kind of a different question. So does that matter? Or how do we decide whether to look at state law in determining whether there is any sort of direct or indirect relationship between the current owner and the previous owner? I think, Joanna, to answer your final question, how you determine whether to look at state law is to look at what Congress intended. And whether Congress intended in this case to look at state law for that determination. Well, they sort of don't tell us in any very direct way. They just say, you know, here's a long list of types of documents and other things that transfer ownership or possession. So somehow we have to decide what actually transfers ownership or possession. And I'm not sure there's a federal answer to that. As a matter of real property law, that's my conundrum. Well, to the extent that there's an ambiguity, then the applicable interpretive norms are, first of all, to interpret what's at issue as an affirmative defense and the burden is on the defendants to approve that affirmative defense. In CERCLA, the affirmative defenses, it's well established, are to be interpreted very narrowly. So if the court is on the fence, and respectfully we don't think it should be, but if the court is on the fence, the rule of interpreting affirmative defenses narrowly should be the decider. And this court in the Carson Harbor case specifically noted that the innocent purchaser defense should be interpreted narrowly. That sort of presumes that there is a purchaser relationship. That's where I get stuck, because if state law says there is no relationship between the previous prior owner and the current owner, I guess that's where I'm kind of hung up. I understand. Well, let's go back to, if I may, Your Honor, what we began, what you began with, and that is the very broad definition of contractual relationship. Congress, in three different ways, indicated that it wanted that definition to be very broad. It started with including but not limited to. It said any other deeds and then any other instrument transferring title or possession. And finally, the choice of the word instrument, which is a broader term than, say, contracts. So, I mean, certainly the argument, how we believe the court should read the statute, is that any instrument transferring possession is a contractual relationship. And frankly, looking at it that way, it doesn't really matter whether you're looking to state law or federal law, because there's no dispute, there could be no dispute, that prior to the tax deed, the Davis Trust had possession of the property. After the tax deed, West Side Delivery had possession of the property. If we want to think of that as a question of state law, state law is clear that there was a transfer of possession. I think that what hangs us up in this case is the very question you're asking about, Judge Graber, how significant is it that the transfer of title, that there was a new title under California state law and the law of most other states, how significant is that to the circular question? Counsel, let me ask you this to kind of follow up on Judge Graber's question. It seems to me when I read 35A, it talks about the very expansive definition of what transferring title effectively is. Title and possession. And then it has title, then it has these exceptions under it where it talks about, for example, if someone obtains it by inheritance or bequest or it is involuntarily transferred to the state. It seems to me one argument you could make, and let me know if I'm missing something here, is that essentially if it is a voluntary bargain for transfer, if you go into this thing saying I want to buy that property and you're on notice or at least constructive notice there's a problem with it, you're on the hook. If you obtain the property some other way, like through inheritance or somehow involuntarily, that's different because you did not essentially bargain for this problem. Thank you, Your Honor. I think that that's exactly right. I'm going to my reserve time, but if I can quickly just expand on that point. Congress also created other exemptions for involuntary contamination, such as the contiguous landowner exemption, the provisions in Section 10120 where the county involuntarily exceeds. I think it's exactly right that what Congress was doing in the innocent landowner defense and then in the bona fide prospective purchaser defense is saying if you voluntarily acquire property, contaminated property, it's your obligation to investigate it thoroughly beforehand. And the larger statutory scheme is Congress concluded that the environment and public good would be served by having purchases of property be very careful. And as a law review article we cite in the reply brief said, Congress concluded that parties ignorantly purchasing property was part of the problem. And so they made the clear choice to give a benefit only to those purchasers who thoroughly investigated before buying. Thank you. Thank you. That microphone has been doing that for days. It's not you. Thank you. Good morning. May it please the Court. My name is Emily Murray. I'm here on behalf of defendant and the appellee Westside Delivery. As Judge Graber said, this case in some ways really is a law school question. It's a question of interpretation of the third party defense under CERCLA. Is it a question of federal law? Is it a question partly of state law? Help us out. Yes, Your Honor. It is a question of state law when it comes to the interpretation of what a contract is because the federal law lists all of the possible instruments that may constitute a contractual relationship. And then you look to the state law for the definition for what that contract might be. There is no federal common law of tax sale foreclosure. Counsel, how is this not a deed transferring title or possession? So, Your Honor, I think that looking at the tax deed itself to define the contractual relationship is a little too narrow. The transaction or the process is the complete involuntary divestiture of possession and title from Davis property through the county and then the tax deed issued to the purchaser Westside Delivery. So the tax deed itself is a contractual relationship between the county, the seller, and Westside, the purchaser. It is not, there is not a contractual relationship between Davis, the polluting party, and the county. Where does it say that is required in 35A? 35A actually, 35A2 expressly exempts this type of transaction from the tax sale involuntary divestiture. That is if the defendant is a government entity. Right. So when the government acquired the property through the tax sale foreclosure from Davis Chemical, the government did not take the liability. So it would defeat the purpose of the government's ability to take a property at a tax sale, free and clear of environmental liability, but then prohibit the government from selling that property with the environmental liability essentially reattached. So there is a clean break at the point of the tax sale. Just so I understand, you mentioned this is like law school, so I'm going to throw a couple hypotheticals your way. Please. All right, so first hypothetical is that I see this property, I say I want to buy it, so I go to the owners and they say, you know what, we'd love to sell it to you, but there are all these tax liens we haven't paid. And I say, you know what, don't worry about it. I'm going to pay your tax liens and then I'm going to buy it. In that situation, I take it, then I would be liable for the contamination of the property. Yes, Your Honor. If you acquired the property directly from the polluting property through a purchase and sale agreement, one of the terms of that PSA was that you were going to pay off the tax debt, then that would be a direct contractual relationship between you and the… Okay, so then hypothetical two is I go to the property, I say I want to buy it, they say there are all these tax liens, and I go, well, you know what, I'm going to let this thing go to auction and I'll just buy it at auction. And so the same thing happens. I buy the same property, same situation. In that situation, I would not be liable. Correct, Your Honor, although you certainly would have no guarantee of being the acquiring… No, but for liability purposes, for CERCLA purposes, under version one, because I pay the tax liens before I buy it, therefore I'm on the hook. But in situation two, I don't pay the tax liens, let it go to auction and I buy it, I'm not on the hook. So, correct, in terms of how the third party defense is framed. Why would Congress want that result? I think the framing of the third party defense is intended to create a narrow set of circumstances under which a party that does not cause the contamination can acquire property and can own property without acquiring the liability. But I didn't cause it in the first instance either. Correct, and in the first instance, you may not be able to avail yourself of this defense, but you may be able to avail yourself of the bona fide prospective purchaser defense or the innocent landowner defense. But if I knew going in that it was contaminated and I bought it, why would I not be on the hook for that? You may be a bona fide prospective purchaser also entitled to… How would I be that in this situation? I know the land is contaminated and I buy it. So, if you were a bona fide prospective purchaser, say you did a phase one environmental site assessment, you would assert you had done all appropriate inquiry, you purchased the property with knowledge of the contamination, and you're entitled to the bona fide prospective purchaser defense. What happens in a tax sale? Let's say the – I'll just make up the numbers. The amount of money owed in taxes is $10,000. The landowner doesn't pay the taxes. The landowner knows the property is contaminated. The property sells for $10,000. I guess at that point the landowner gets nothing. If the property sells for $20,000, the landowner gets the difference, right? He gets $10,000. The landowner has a claim against the county for the excess proceeds. Right. So, the county will pay to the original landowner any money left over after the taxes are satisfied plus some administrative costs? Correct. Okay. So, let's say I own contaminated property. I owe $10,000 worth of taxes. The property, if sold directly by me, sells for essentially nothing because of the contamination and the necessity for the landowner who purchases from me to clean it. On the other hand, if the purchaser can take free and clear of the liability, the property sells for, let's say, $100,000. Well, I'd much rather default on my taxes, have the county sell it. The purchaser buys free and clear of any obligation to clear up the contamination, so the purchaser is willing to pay $100,000, and so I get $90,000. That's a pretty good deal. So, I'm trying to track through the hypothetical. Well, what I'm saying is if the owner of the contaminated land owes taxes, defaults on the taxes, goes through a tax bill procedure, he can make a lot of money if he goes through the county that way and sort of scrapes off any liability because under your theory, the purchaser at the tax sale takes free and clear of any obligation to clean it up, which means he's willing to pay essentially full value for the property, whereas if he'd bought it directly from the original owner who had the land that was contaminated, he wouldn't. So, the seller of the property, or rather the person who owes the taxes, is enormously advantaged if he runs it through the tax sale system. Isn't that how that was going to work under your theory of the case? Two reasons that it would not work that way. One is that the default, in this case, Davis Chemical, the polluting party, the responsible and tax defaulting party, remains liable for the environmental contamination on the site. So, they don't scrub their own environmental liability by letting the property go to the tax sale foreclosure. So, the government and any other responsible parties would conceivably have a cost recovery or contribution claim against that tax defaulting party. But the government could go against the subsequent purchaser, correct? Not if the subsequent purchaser has a defense to circle a liability. So, in this case, the purchaser at the tax sale, Westside Delivery, has a defense to liability under the third party defense. A subsequent purchaser who purchased it directly from your contaminating property owner may also have the bona fide prospective purchaser defense or the innocent landowner defense. So, each of those three defenses are narrowly tailored defenses that entitle a party to acquire a contaminated site to put that property back into circulation without acquiring the environmental liability. And if I may, that purpose is consistent with the notion of allowing the government to acquire a contaminated site without acquiring that liability. Let me work this through again. So, the owner that owns contaminated property has to decide what he wants to do with it. If he sells it to somebody just directly, the new landowner is liable, but the original seller is also liable, correct? If that's what you're telling me. The new owner may not be liable. The seller is always liable. We're assuming the seller is the contaminated party. No, I want this to be a case where this is a direct sale, the county is not intervening, the owner has contaminated property, he sells it to the new owner under circumstances where the innocent owner defense does not apply. So, under my hypothetical, the new owner is also liable. Unless the new owner did a phase one environmental site assessment and is a bona fide prospective purchaser. So, under the BFPP defense. No, please don't. Help me with the hypothetical, don't fight it. I'm trying to set up a situation in which the new owner is liable and the prior owner is liable. Do we have those situations in the real world? Yes. Okay, I want one of those. Okay. So, the owner has his choice of doing that and then at that point, I guess, the state can come after one or the other for it. Or both. In the circumstance where he sells it to the new owner, with the new owner knowing he's on the hook, he gets less money. If he sells it through the tax sale process, he gets quite a bit of money under my hypothetical. So, if he's got to pay or has the possibility of having to pay cleanup costs, all of a sudden he's got a lot more money to pay him with. So, under the strict hypothetical, I agree. I think that the selling owner cannot control the circumstances into that hypothetical for at least two reasons. One, he cannot control the purchasing party's ability to conduct a phase one investigation and avail themselves of the defense. So, he can't kind of game the system by doing that. And two, he can't control the amount of the sale of the property at the tax sale. And we do know that tax sales, the prices there are significantly discounted. I get that. Correct, for reasons having nothing to do with the environmental condition of the property. Nonetheless, it strikes me as an odd way for Congress to set this up to allow sort of the liability to be scraped off so that the new owner, even if taking entirely with notice of the contamination, simply owes nothing. I think that that is consistent with both the third party defense and the bona fide prospective purchaser defenses. So, these are defenses that are narrowly tailored for parties who don't cause contamination. And the purpose, the broad remedial purpose of CERCLA is to remediate contaminated properties and to hold the parties responsible for that contamination liable. Well, it's narrowly tailored to protect parties who don't cause the contamination and who, when acquiring the property, have no reason to know about it.  someone who purchases at a tax sale, even if that person knows about the contamination, is not liable. Your Honor, only the innocent purchaser defense applies to parties who had no reason to know. Both the third party defense and the bona fide prospective purchaser defense do not have a requirement that the acquiring party not have reason to know or actually know of the contamination. But let me make sure I've got the... just understand how the system is working. Under your theory of the case, someone purchasing at a tax sale may know... I am assuming knows very well that it is contaminated and is going to need remediation. Nonetheless, that person who purchases at the tax sale purchases free of any obligation to pay for that. That's your theory of the case. Correct, Your Honor. Just like the bona fide prospective purchaser. But to be a BFPP, there are all other kinds of things you have to do. Aren't there? To qualify for that defense, you have to provide all legally required notices regarding the release. You have to do the all appropriate inquiry. There are other steps you have to do to become that, correct? Correct. And there are also other steps you have to do to avail yourself of the third party defense. So the due care requirement is consistent with the additional requirements of the BFPP to not allow the release to continue and also... But your client qualifies as a BFPP in this case? No, because our client did not perform... Right. So that's really... that's kind of a red herring, frankly, when we keep bringing it up here. Because for your client's sake, they're not a BFPP. No, they're entitled to the third party defense. They don't need the BFPP defense. Two different questions. Is it your position that we should affirm because they are a BFPP? No, Your Honor. Okay. So they have to qualify in third party defense because of the tax sale? They do qualify for... Yes. Well, no. That's what we're deciding. I understand that's what you're advocating, but that's what we have to decide in this case. Yes, Your Honor. Okay. So the third point I wanted to get to, we talked about the question of is there a contractual relationship? Our position is there's not a contractual relationship because of the absence of relationship between the dispossessed party and the county. The next question would be is that relationship direct or indirect? Is there a contract, direct or indirect, between Westside and Davis? And for the same reason... No, the question is not is there a contract between them? The question is is there a contractual relationship? And relationship is a very broad word under this statute. Yes, Your Honor. That's true. And a contractual relationship is a defined term under the statute. And we are not arguing there's not a contractual relationship between the county and our client, Westside Delivery. What we are arguing is that the involuntary dispossession by the county of Davis' title and interest in the property was a clean break in that contractual relationship that does not allow, that does not attach a relationship between Westside and Davis. Right. And in order to argue that position, are you arguing that as a matter of federal law and interpreting the federal statute? Yes. And I am also arguing as a matter of state law. So the federal law... Okay. So how does the state, on your theory then, how does the state law come in? Okay. So the state law comes in by reference to California Tax Code Section 3712, which is a description of the title that is passed to the party acquiring the site at the, acquiring the property from the county through the tax sale process, which specifically states that the title that is passed to the acquiring party is a new clean title free of all encumbrances. Okay. The federal law component is the absence of a contractual relationship as set forth in 960135A Romanette 2, which provides that the county itself does not have a contractual relationship with, in this case, Davis Chemical. Okay. I am almost out of time, but the last point that we did want to raise was that there is a, the final element in the contractual relationship language under the statute is the in connection with language. That's been addressed by the Second Circuit. It has not been addressed directly by the Ninth Circuit. The Second Circuit in Westwood Pharmaceutical and New York versus Lashen's Arcade have held that in order for a landowner to be barred from raising the third party defense, the contract between the landowner and the third party must relate to the hazardous substance or allow the landowner to exert some element of control over the third party's actions. So we would submit that, first, you don't need to get there because there isn't a contractual relationship. It's not direct or indirect, but even if it were, the contractual relationship is not in connection with the hazardous substance, the activities conducted by Davis Chemical with respect to hazardous substances. Okay. Thank you, Your Honor. Thank you very much. Thank you. Thank you, Your Honors. I'd like to respond first to the issue of the BFPP defense. And one of the requirements of the BFPP defense is that the purchaser conduct all appropriate inquiries. And it's clear that Congress decided that the detailed investigation property that is named all appropriate inquiries is a public good. If once that work is done, it's in the public knowledge, as this case illustrates, if the investigation is not paid for by private parties, then it will have to be paid for by the public. So one way to look at the BFPP defense and that requirement is it's Congress deemed that the all appropriate inquiry is what my learned colleague refers to as a phase one inquiry, is part of the price a knowing purchaser of contaminated property has to pay in order to be entitled to defense. And in this case, in the analogous case, the tax sale purchaser hasn't conducted that, hasn't contributed to the public good. And again, has not helped address the problem that they demonstrate that they're a developer who would know how to clean up the property and contribute to the public good. Turning back to the federal law versus state law question, Congress, by defining contractual relationships so broadly, I think really precludes any view that they intended the availability of the defense to hitch on a state law. And the way we put it in the opening brief is the larger statutory structure doesn't really admit the possibility that a chain of title is the sine qua non of the defense. That's inconsistent with 10135A. It's inconsistent with the principle that CERCLA's affirmative defense is being interpreted narrowly. Responding to the suggestion that West Side Delivery, another tax sale purchaser, is entitled to the third party defense, as distinguished from the innocent landowner defense, that's really inconsistent with what Congress had in mind when it created the third party defense in the original enactment of CERCLA. As we've argued and demonstrated, Congress at that point was trying to protect existing owners of properties who were victims of new contamination. The language of 107B3 indicates that the requirement that the defendant prove that it took reasonable precautions. That makes sense to prevent the foreseeable act of a third party. That makes sense in the context of somebody who already owns the land. It doesn't make sense in the context of somebody purchasing contaminated property. And so, until the Sarin amendments in Congress added the innocent landowner form, the third party defense just didn't, it wasn't Congress's intention to apply it to any purchaser, let alone tax sale purchasers. In some genres, unless the court has any other questions, there's just no indication that Congress did intended to, there's certainly no indication that Congress intended to create a tax sale exemption and there's no reason why it would have and we respectfully submit that it did not. Thank you. Thank you. Thank both sides for helpful arguments. Case of California Department of Toxic Substance Control versus Westside Delivery submitted for decision.
judges: Graber, W. Fletcher, Owens